NEWMAN, Circuit Judge,
dissenting.
This appeal is from a decision of the Patent Trial and Appeal Board (“PTAB”), on Inter Partes Review in accordance with the America Invents Act. The PTAB held the claims of the patent in suit invalid. My concern is with the court’s implementation of this new statute, lest its legislative purpose be unfulfilled.
The America Invents Act (“AIA”) is the fruit of eight years of study, as legislators and other concerned persons considered how to revive industrial innovation in the United States. Loss of an effective patent incentive was believed to have contributed to diminished technologic advance and consequent losses in economic growth. See 157 Cong. Rec. S948-49 (daily ed. Feb. 28, 2011) (statement of Sen. Leahy) (“High quality patents are the key to our economic growth.”); 157 Cong. Rec. H4423 (daily ed. June 22, 2011) (statement of Rep. Smith) (“The current patent system is outdated and dragged down by frivolous lawsuits and uncertainty regarding patent ownership. Unwarranted lawsuits that typically cost $5 million to defend prevent legitimate inventors and industrious companies from creating products and generating jobs.”); 153 Cong. Rec. HE773 (daily ed. Apr. 18, 2007) (statement of Rep. Ber-man) (introducing a predecessor bill) (“These studies offer a number of recommendations for increasing patent quality and ensuring that patent protection promotes — rather than inhibits — -economic growth and scientific progress.”).
It was believed that the PTO was granting patents too easily, and that the courts were not consistently deciding patentability issues. To attempt to remedy these deficiencies, the America Invents Act created a new adjudicative tribunal (the Patent Trial and Appeal Board or PTAB) within the Patent and Trademark Office, and established new procedures including changes in the burdens of proof, limiting the path of judicial review, and providing for finality and strict time limits. The purpose is to restore an effective and balanced system of patents, whereby valid patents may reliably be confirmed and invalid patents efficiently invalidated.
This appeal raises questions of implementation of the statutory plan, for the judicial role includes assuring that the statutory assignment is fulfilled. The Supreme Court has stated:
Reviewing courts are not obliged to stand aside and rubberstamp their affir-mance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not *840 fully review such administrative decisions.
N.L.R.B. v. Brown, 380 U.S. 278, 291-92, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965).
The realignments of burdens and standards of proof established by the America Invents Act are part of the legislative balance, whose target is correctness and efficiency. My concern is that the PTAB and this court have departed from explicit and implicit provisions of the statute. When that departure is rectified, the result is changed. Thus I must, respectfully, dissent.

The Burden of Proof in the PTAB

The America Invents Act requires that the burden of proving invalidity of an issued patent is on the petitioner for post-grant review. 35 U.S.C. § 316(e). The Act established the standard of proof of invalidity to be applied by the PTAB, requiring that invalidity be proved by a preponderance of the evidence, and eliminating any deference to the prior examination and grant of the patent. As an important aspect of the legislation, the Act did not adopt the judicial standard of requiring clear and convincing evidence to establish invalidity.
Although the placement of the burden of proof of invalidity is on the petitioner, the petitioner now may prove invalidity by no more than a preponderance of the evidence. 35 U.S.C. § 316(e).
The AIA established a powerful incentive to challenge patent validity in the PTAB instead of the district court, for the attacker faces a lower standard of proving invalidity in the PTAB. However, the correct law must be applied, and disputed facts found and reviewed on the entirety of the evidence, as the preponderance standard requires.

The Burden of Proof in the Federal Circuit and Finality

Another important aspect of the America Invents Act is the provision for finality and estoppel after the PTAB decision and any appeal to the Federal Circuit. The Act does not permit subsequent review of the PTAB’s validity/invalidity decision in any other tribunal, whether by appeal or direct review or as a defense or offense in litigation. The AIA provides that a petitioner (or real party in interest or privy of the petitioner)
may not assert either in a civil action ... [or] ... before the International Trade Commission ... that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that post-grant review.
35 U.S.C. § 315(e)(2). This change from present law was long-debated, and is directed to the goals of correctness, uniformity, finality, and expedition.
Thus it is incorrect for this court, as the only reviewing tribunal, to review the PTAB decision under the highly deferential “substantial evidence” standard. Our obligation is to assure that the legislative purpose is met, through application of the statute in accordance with its purpose. See Calvert Cliffs’ Coordinating Comm., Inc. v. U.S. Atomic Energy Comm’n, 449 F.2d 1109, 1111 (D.C.Cir.1971) (“Our duty, in short, is to see that important legislative purposes, heralded in the halls of Congress, are not lost or misdirected in the vast hallways of the federal bureaucracy.”). This court’s resort to deferential “substantial evidence” review is at odds with the benefits that Congress intended.
The substantial evidence standard determines whether the decision could reasonably have been made, not whether it was correctly made. See 3 Steven Alan Chil-dress & Martha S. Davis, Federal Standards of Review § 15.04 (4th ed.2010). *841 The substantial evidence standard originated with appeals of jury verdicts, in recognition of the role of credibility at trial. Id. “Substantial evidence” was incorporated into the Administrative Procedure Act in recognition of the expertise of specialized agencies. Id. Here, however, a new system was created to respond to the belief that the agency was making mistakes. See, e.g., 157 Cong. Rec. S1326 (daily ed. March 7, 2011) (statement of Sen. Sessions) (“This will allow invalid patents that were mistakenly issued by the PTO to be fixed early in their life, before they disrupt an entire industry or result in expensive litigation.”); 153 Cong. Rec. H10276 (daily ed. Sept. 7, 2007) (statement of Rep. Goodlatte, commenting on a predecessor bill to the ALA) (“The PTO, like any other large government agency, makes mistakes. H.R.1908 creates a post-grant opposition procedure to allow the private sector to challenge a patent just after it is approved to provide an additional check on the issuance of bogus patents.”). This new system is directed at correcting mistakes. Deferential review by the Federal Circuit falls short of the legislative purpose of providing optimum determination of patent validity.
The Federal Circuit is the only review body for these new agency proceedings, for the America Invents Act displaced the alternative path of challenge to PTO decisions in the district court. Thus the PTAB’s adjudications must be reviewed for correct application of the standard of proof established by the America Invents Act. In 35 U.S.C. § 316(e):
In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.
On appeal to the Federal Circuit, our assignment is to determine whether the PTAB ruling is correct in law and supported by a preponderance of the evidence. The panel majority errs in importing into these proceedings the Administrative Procedure Act standard that applies to initial patent examination decisions, Maj. Op. at 833-34, citing In re Gartside, 203 F.3d 1305, 1313 (Fed.Cir.2000) (PTO decisions sustained if supported by substantial evidence).
Appellate review of agency rulings on the preponderance standard, accompanied by finality, is not the general APA rule, but has been adopted by statute in other special situations. For example, under the Service Contract Act, “[i]f supported by a preponderance of the evidence, the [agency’s] findings are conclusive in any court of the United States.” 41 U.S.C. § 6507(e) (formerly 41 U.S.C. § 39). The regional circuits have interpreted the preponderance standard to require review for “clear error” on appeal. See Dantran, Inc. v. U.S. Dep’t of Labor, 171 F.3d 58, 71 (1st Cir.1999) (rejecting “substantial evidence” review standard); see also Amcor, Inc. v. Brock, 780 F.2d 897, 901 (11th Cir.1986) (“determination by the administrator ... must be affirmed unless it is not supported by a preponderance of the evidence.”).
Such close appellate scrutiny is critical to the legislative balance of the America Invents Act, whose purpose is to reach an expeditious and reliable determination on which inventors and industry innovators and competitors can rely. The Federal Circuit’s adoption of deferential “substantial evidence” review strays from this purpose. If Congress intended that deferential review would apply to PTAB determinations in which “substantial evidence” is “something less than the weight of the evidence,” Consolo v. Fed. Mar. Comm’n, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966), explicit assignment *842 of this standard would reasonably have been expected.
For example, the majority decides that “substantial evidence” supports the PTAB’s finding of a motivation to combine the information in the Serfontein and the Marazza references, as I discuss infra. The PTAB cited no source for this finding, other than “[t]he close similarity of purpose and disclosure between these references.” PTAB Op. at 23. The panel majority, looking for “substantial evidence” supporting the PTAB, does not discuss the evidence weighing against this finding, such as the known side effects of the L-5MTHF isomer, its instability, the equivocal clinical observations, and Merck’s and the University’s commercial success, as well as the long-felt heed, failure of others, industry praise, licensing, and copying. Deferential review on a standard that looks at only one side of the evidence is less likely to uncover errors in the balance and burden of proof.

Application of the Correct Appellate Standard

The patent claims the use of a specific tetrahydro-folate stereoisomer, L-5-me-thyltetrahydrofolate (L-5-MTHF) to treat elevated homocysteine, including a genetic disorder called homocysteinuria, a debilitating affliction that the Serfontein reference (European Patent No. 0595005 (EP'005)) describes as “an inborn error of metabolism which is either caused by an enzyme defect in the transsulfuration pathway or a similar defect in the 5-methyl tetrahydrofolate dependent remethylation of homocysteine to methionine.” EP'005 at 3,11. 20-22.
The PTAB found that Serfontein concerns the generic class of “folate or a suitable active metabolite of folate or a substance which releases folate in vivo.” PTAB Op. at 23. Serfontein states that “it is known that vitamin B6, vitamin B12 and folate play a role in regulating the methionine-homocysteine pathway and controlling levels of homocysteine,” EP'005 at 3, 11. 54-56, and that “[a]t the same time, deficiencies (individually) of each of these vitamins have also been, known to be associated with increased homocysteine levels.” EP'005 at 3, 11. 31-32. This description does not mention the L-5-MTHF isomer, or that this specific stereoisomer is effective in treating elevated homocysteine.
Serfontein recognized an “association” between folate deficiency and increased homocysteine, but did not suggest that L-5-MTHF is useful to treat elevated homo-cysteine, with or without B vitamins. The PTAB recognized this gap in Serfontein, and held that Marazza, U.S. Patent No. 5,194,611 (“the '611 Patent”), filled the gap. Marazza states that L-5-MTHF is “the predominant circulating form of reduced folates in mammals,” and “[tjhere exists an increasing interest for the application of this natural metabolite as at least one active compound in a therapeutical agent, for example as vitamin in folate deficiency states.” '611 Patent, col. 3, 11. 23-29.
However, Marazza does not link the L-5-MTHF isomer to treatment of elevated homocysteine, or suggest this use. And Serfontein only states that elevated homo-cysteine levels are' “associated with” folate deficiency. EP '005, col. 3, 11. 31-32. Missing is a teaching or suggestion in either of these references that L-5-MTHF could be effectively used to treat elevated homocysteine with a reasonable expectation of success. Several other references in the record discuss folate biochemistry and report various scientific investigations, yet amid extensive and extremely close prior- art, no reference suggests the method described in this patent.[1]
*843 The PTAB erred in concluding that “one reading Serfontein would have considered 5-methyl-(6S)-tetrahydrofolic acid (L-5MTHF) a viable choice, as expressly taught in Marazza, for a suitable active metabolite of folate in Serfontein’s method.” PTAB Op. at 25. Marazza does not teach that L-5-MTHF is suitable to treat elevated homocysteine, but only that it is an “active” folate for treating folate deficiency. Amid the uncertain predictability of biological response, this background does not provide a reasonable likelihood of successful treatment with any selected stereoisomer. Only hindsight provides such prophesy.
The evidence of record does not support the PTAB’s apparent assumption that any folate would be effective against elevated homocysteine. No reference teaches that L-5-MTHF has this activity. A prima facie case cannot be based on the inventor’s successful investigations.
The PTAB states that “Serfontein calls for a ‘suitably active metabolite of folate’ in preparations used to correct folate deficiency and treat diseases associated with elevated levels of homocysteine.” PTAB Op. at 23. This statement appears to enlarge Serfontein, who uses folate for “lowering levels of homocysteine or ... counteracting the harmful effects associated with homocysteine.” EP'005 at 2, 11. 1-3.
The PTAB states that “Marazza specifically identifies chirally-pure L-5-MTHF as an active metabolite of folate suitable for use as a therapeutic agent in folate deficient states.” PTAB Op. at 23. The PTAB combines the Serfontein and Maraz-za references because “the close similarity of purpose and disclosure between these references would have provided sufficient rationale for one of ordinary skill in the art to have combined the teachings therein.” PTAB Op. at 23. However, there is no suggestion to select and make such combination with a reasonable expectation of success in treating elevated homocysteine. The only source of this concept is hindsight reconstruction using the teachings of these inventors.

The Evidence does not Establish a Reasonable Likelihood of Success

My colleagues find that “the PTAB impliedly found a reasonable expectation of success,” observing that the PTAB did not accept Merck’s argument that the references “taught away” from Merck’s use. It is undisputed that no reference taught Merck’s use. There was evidence of instability and failures using the L-5-MTHF isomer in folate treatments. No reference contains a suggestion to use L-5-MTHF or expectation of success. Even Marazza states only that there was “an increasing interest” in L-5-MTHF. '611 Patent, col. 1,1. 25.
The Court in KSR International Co. v. Teleflex Inc., 550 U.S. 398, 421, 127 S.Ct. 1727, 167. L.Ed.2d 705 (2007), in discussing the “obvious to try” standard of obviousness, cautioned that something would be “obvious to try” if “there are a finite number of identified, predictable solutions” with “anticipated success.” “The obviousness inquiry entails consideration of whether a person of ordinary skill in the art ‘would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and ... would have had a reasonable expectation of success in doing so.’ ” Insite Vision Inc. *844 v. Sandoz, Inc., 783 F.3d 853, 859 (Fed.Cir.2015) (quoting Procter & Gamble Co. v. Teva Pharms. USA, Inc., 566 F.3d 989, 994 (Fed.Cir.2009)) (elisions in original). Here, the purported “reasonable expectation of success” came from the hindsight knowledge of these inventors’ success.
The references are not uniform, as the panel majority acknowledges. Merck provided references showing that experiments administering L-5-MTHF to human subjects were abandoned or not conducted because the compound was too unstable. Merck also provided references describing experiments that show that 5-MTHF is not metabolized by hepatoeytes grown in culture. Other references suggest that reduced folates such as L-5-MTHF are less bioavailable than folic acid. PTAB Op. at 20. These references support the position that adverse effects, or no clear benefit, would reasonably be predicted for L-5MTHF.
In contrast, Gnosis provided references suggesting that lower concentrations of reduced folates could produce the same intracellular concentrations as folic acid. PTAB Op. at 20-21. Whether or not these inconsistent teachings are viewed as “teaching away” they do not teach toward a reasonable likelihood of success. The panel majority errs in law, in stating that “the PTAB impliedly found a reasonable expectation of success” based on the PTAB’s finding of no “teaching away.” Such “implication” resides only in the backward-looking eye of the beholder.

Objective Indicia of Non-obviousness

Indicia such as commercial success “may often be the most probative and cogent evidence [of non-obviousness] in the record,” Procter & Gamble Co. v. Teva Pharm. USA Inc., 566 F.3d 989, 998 (Fed.Cir.2009) (modification in original) (quoting Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1538 (Fed.Cir.1983)). Such considerations are a foil to judicial hindsight. In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Li-tig., 676 F.3d 1063, 1075-76 (Fed.Cir.2012) (“The objective considerations, when considered with the balance of the obviousness evidence in the record, guard as a check against hindsight bias.”).
Here there was a crowded field of science, and the response of the marketplace, in an area of recognized need, is evidence that the assertedly obvious discovery by these inventors was not obvious, for it eluded many scientists in the field.
My colleagues respond to Merck’s evidence of commercial success, industry praise, copying, and licensing, by stating that “[e]ven when present, however, objective indicia ‘do not necessarily control the obviousness determination.’ ” Maj. Op. at 837. However, the law is not that the objective indicia must “control” the result, but that these indicia must be considered, for whatever weight the evidence warrants. The value and need for an invention, and failure of others to solve a known problem, is relevant evidence.
The PTAB discounted Merck’s evidence of commercial success, observing that the commercial products contained vitamins in addition to L-5-MTHF. I doubt that this squabble is about the sale of vitamins; there is no suggestion, anywhere in the record before us, that these products were sold and purchased for any purpose other than for the L-5-MTHF to treat homocys-teineurea, with or without beneficial B vitamins as in claim 22. See In re GPAC, 57 F.3d at 1580 (Fed.Cir.1995) (“A prima fa-cie case of nexus is generally made out when the patentee shows both that there is commercial success, and that the thing (product or method) that' is commercially successful is the invention disclosed and claimed in the patent.”). Here there was *845 no argument • that consumers purchased the L-5-MTHF product to obtain other ingredients.
The panel majority acknowledges that “although another factfinder may have reasonably evaluated Merck’s evidence of objective indicia of non-obviousness differently in the first instance, the Board’s conclusion ... is supported by substantial evidence.” Maj. Op. at 839. This is another illustration of the flaw in this court’s using the substantial evidence standard, for the question before us is whether the preponderance of the evidence supports the PTAB’s decision.
Conclusion
The America Invents Act is a remedy for the present regime of uncertainty and unreliability of patents. Our obligation is to assure that the correct law is applied, that the burdens are correctly placed, and that the statutory standard of proof is met.
The PTAB is not an examining body, but an adjudicatory body, an objective arbiter between opposing parties. On ques- ■ tions that are close, as here illustrated, the standard of review can affect the result. My colleagues err in applying deferential review, instead of assuring that the PTAB’s factual findings are supported by the preponderance of the evidence, as the statute requires.
From the court’s departure from the criteria of the America Invents Act, and from the incorrect result that ensues in this case, I respectfully dissent.

. It has been suggested that the claims are unduly broad. This breadth is challenged in the concurrent inter partes review of U.S. Patent No. 7,172,778, where an additional reference is discussed.