JORDAN, Circuit Judge, concurring:
I concur in and join Judge Rosenbaum's opinion for the court. Although the task for the district court on remand is an unusual *387 one, I cannot think of a better alternative given the circumstances. Cf. United States v. Kelly , 2016 WL 8732182, *5 (D. Nev. 2016) ("The question of whether ethylone is an isomer of butylone-specifically, a positional isomer-is a question for the jury."), aff'd , 874 F.3d 1037 (9th Cir. 2017).[1]
As the court correctly explains, the DEA has failed to define the term "positional isomer" for the temporary listings in 21 C.F.R. § 1308.11(h). The only regulatory definition of "positional isomer" is found in 21 C.F.R. 1300.01(b)(21)(ii), but that definition, given its qualifying language-"[a]s used in § 1308.11(d) of this chapter"-does not include § 1308.11(h). See Burgess v. United States , 553 U.S. 124, 130, 128 S.Ct. 1572, 170 L.Ed.2d 478 (2008) ("As a rule [a] definition which declares what a term 'means' ... excludes any meaning that is not stated.") (citation and internal quotation marks omitted). In my view, this definitional void may present a vagueness problem even if, as the district court concluded, it was the result of "an unintentional drafting omission." D.E. 65 at 3.[2]
When a term is not defined in a statute, the general rule is that "legislative purpose is expressed by the ordinary meaning of the words used." Russello v. United States , 464 U.S. 16, 21, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). And when the undefined term is a term of art, the presumption is that "Congress intended it to have its established meaning." McDermott Int'l, Inc. v. Wilander , 498 U.S. 337, 342, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). So far so good. But when the undefined term of art does not have a settled meaning, we cannot use the McDermott presumption, as the Supreme Court told us in De Pierre v. United States , 564 U.S. 70, 79 n.8, 131 S.Ct. 2225, 180 L.Ed.2d 114 (2001) (explaining that McDermott does not apply "when there is no 'settled meaning'-scientific or otherwise").
An "isomer" is a "compound[ ] with the same chemical formula [as another substance] but different structures." D.E. 98 at 50. See also The American Heritage Dictionary of the English Language 928 (4th ed. 2009) (defining isomer as "[a]ny two or more substances that are composed of the same elements in the same proportions but differ in their properties because of differences in the arrangement of atoms"). On this record, there are at least two possible (and scientifically accepted) definitions of the term "positional isomer." One is the government's definition, as set forth in § 1300.01(b)(21)(ii), and the other is the one provided by Mr. Phifer's expert. The difference between these two definitions concerns the carbon skeleton of the isomer. The government's definition does not require an identical carbon skeleton for an isomer to be "positional," while Mr. Phifer's definition does. These two definitions, however, do not necessarily constitute the relevant universe. As the court explains in its remand instructions, the district court must instruct the jury on all *388 definitions of "positional isomer" that it finds are generally accepted in the scientific community.
Conceivably, the jury here could be given a handful of definitions for the term "positional isomer." In my own non-exhaustive research, I have found several definitions in the case law and literature, though I cannot confidently say that they are generally accepted, or that the differences in wording are significant in a legal or scientific way. See Procter & Gamble Co. v. Teva Pharmaceuticals USA, Inc. , 566 F.3d 989, 995 (Fed. Cir. 2009) (describing positional isomers as "contain[ing] the same atoms arranged in different ways"); 2 Concise Encyclopedia of Science & Technology 1514 (McGraw-Hill 6th ed. 2009) ("Positional isomers ... have the same functional group but differ in its position along a chain or in a ring."); Dorland's Illustrated Medical Dictionary 965 (32nd ed. 2012) (defining "positional isomerism" as "a type of constitutional isomerism in which the position occupied by a carbon or atom differs with reference to the same fundamental carbon chain").
Criminal statutes and regulations need to be written in a way that allows a reasonable person to understand what is prohibited. This is not only an expectation of good government, it is a demand of constitutional proportions. See, e.g., Maynard v. Cartwright , 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) ; United States v. Edgar , 304 F.3d 1320, 1327 (11th Cir. 2002).
If there are a handful of generally accepted definitions of "positional isomer" in the scientific community, there might be an as-applied vagueness problem. In that scenario it would be difficult to see how a reasonable person could have known in 2015 whether ethylone was a "positional isomer" of butylone. That reasonable person would have had to survey the scientific community, figure out which definitions of "positional isomer" were generally accepted, and then try to apply each of those definitions to ethylone. Cf. United States v. Apex Oil Co., Inc. , 132 F.3d 1287, 1291 (9th Cir. 1997) (dismissing criminal charge because the word "petroleum" was not defined in the applicable regulation: "In the face of uncertainty as to the meaning of what is forbidden, the rule of lenity requires dismissal of count one of the indictment."). On the other hand, the government points out that, notwithstanding any general vagueness concerns, there is evidence that here Mr. Phifer knew he was engaging in illegal conduct (e.g., by admitting to law enforcement that the way the ethylone was packaged and imported led him to believe it was illegal). And that, says the government, eliminates any vagueness claim. See Br. for the United States at 27 (citing United States v. Carlson , 87 F.3d 440, 444 (11th Cir. 1996) ). Given that we are remanding for an evidentiary hearing, I do not express any view how any vagueness issue should be resolved.

On March 1, 2017, the DEA added butylone to its permanent Schedule I. 82 Fed. Reg. 12,171-12,177 (Mar. 1, 2017). Because this occurred after the events in Phifer's case, we analyze Phifer's case under the law as it applies to drugs temporarily placed on the schedules.

Kelly is the only reported case which involves a criminal charge based on ethylone being a positional isomer of butylone. But Kelly is of little help here because the defendant in that case, who pled guilty, did not contest that ethylone is a positional isomer of butylone. See Kelly , 874 F.3d at 1045.

I am not persuaded by the government's argument that the DEA intended the definition of "positional isomer" in § 1300.21(b)(21)(ii) to apply to the temporary listings in § 1308.11(h). See Br. for the United States at 20-23. Even assuming that such an intent was likely, "[p]robability is not a guide which a court, in construing a penal statute, can safely take."United States v. Wiltberger , 18 U.S. (5 Wheat.) 76, 105, 5 L.Ed. 37 (1820). The DEA can, of course, fix the problem by enacting a regulation that defines "positional isomer" for purposes of § 1308.11(h).