Opinion for the court filed by Circuit Judge Stoll.
Concurring opinion filed by Circuit Judge Reyna. Stoll, Circuit Judge.
Stoll, Circuit Judge.
Endo Pharmaceuticals, Inc. filed a petition for inter partes review with the Patent Trial and Appeal Board to review the pat-entability of Depomed, Inc.’s U.S. Patent No. 6,723,340. The Board instituted an IPR proceeding on a subset of the grounds in the petition and ultimately determined that two instituted grounds collectively rendered claims 1, 3-5, and 10-13 unpat-entable as obvious. Depomed appeals from the Board’s final written decision, challenging the Board’s patentability determination. We affirm.
Background
I.
Depomed is the assignee of the ’340 patent, which is generally directed to vehicles for drug delivery. Specifically, the ’340 patent discloses “[u]nit dosage form tablets for the delivery of pharmaceuticals [that] are formed of the pharmaceutical dispersed in a solid unitary matrix that is formed of a combination of polyethylene oxide) and hydroxypropyl methylcellu-lose.” ’340 patent Abstract. The patent explains that many drugs have their greatest therapeutic effect when they are released in the stomach in a prolonged, continuous manner because such delivery presents fewer side effects and reduces the need for repeated or frequent dosing.
Gastric retention, where the particles in a drag are retained in the stomach for a prolonged duration, can be achieved by using drag formulation particles small enough to be swallowed comfortably but that swell to a larger size upon contact with gastric fluids. “One means of achieving a swellable particle is to disperse the drag in a solid matrix formed of a substance that absorbs the gastric fluid and swells as a result of the absorbed fluid.” Id. at col. 211. 28-31. These polymer matrices also provide a controlled release of a drug over a prolonged period of time.
Polyethylene oxide) (“PEO”) is a matrix material that possesses both swelling and controlled release properties but raises toxicology concerns when used in the amounts required for high drug dosages. Hydroxypropyl methylcellulose (“HPMC”) is another matrix material that swells to a lesser degree than PEO but offers “the benefit of a more even and generally faster erosion in the gastric environment so that the dosage forms can clear the GI tract more predictably after a few hours of drug release.” Id. at col. 3 11. 20-23. The patent asserts that HPMC can be disadvantageous, however, because it causes a high initial burst of drag release and a lower degree of control over the drug release rate during the initial course of the drug release.
The ’340 patent purports to improve on the prior art by combining PEO and HPMC in a matrix “for a swellable, sustained-release tablet [that] provides unexpectedly beneficial performance, avoiding or substantially reducing the problems enumerated above and offering improved control and reliability while retaining both the ability to swell for gastric retention and to control release.” Id. at col. 3 11. 35-40. Claim 1 is illustrative of the challenged claims and is reproduced below:
1. A controlled-release tablet for releasing a drag into at least a portion of a region defined by the stomach and the *950 upper gastrointestinal tract, said tablet comprising a solid monolithic matrix with said drug dispersed therein, said matrix comprising a combination of polyethylene oxide) and hydroxypropyl methylcellulose at a weight ratio that causes said matrix to swell upon contact with gastric fluid to a size large enough to provide gastric retention, wherein;
said drug has a solubility in water that exceeds one part of said drug per ten parts of water, by weight, and wherein;
said polyethylene oxide) has a viscosity average molecular weight from about 2,000,000 to about 10⅛000,000, and wherein
said hydroxypropyl methylcellulose has a viscosity of from about 4,000 centi-pose to about 200,000 centipose, measured as a 2% solution in water.
’340 patent col. 111. 60—col. 12 1. 9.
II.
Endo petitioned for IPR of the ’340 patent, alleging that claims 1-5 and 10-13 were unpatentable as obvious under 35 U.S.C. § 103 in view of five different prior art grounds.[1] The Board instituted an IPR on claims 1, 3-5, and 10-13 on the obviousness grounds of (1) PCT Application No. WO 98/55107, titled “Gastric-Retentive Oral Drug Dosage Forms for Controlled Release of Highly Soluble Drugs” (“Shell 1998”); (2) Shell 1998 in combination with a 1993 article entitled “Swelling Studies on Mixtures of Two Hydrophilic Excipients” (“Papadimitriou”); and (3) Papadimitriou in combination with U.S. Patent No. 4,871,-548. The Board did not institute on two other grounds in Endo’s petition, calling them redundant of the instituted grounds. in addition, the Board did not institute review of claim 2.
The Board’s final written decision concluded that claims 1, 3-5, and 11-13 are unpatentable as obvious in view of Shell 1998. Endo Pharm., Inc. v. Depomed, Inc., IPR2014-00652, 2015 WL 5470293, at *6 (P.T.A.B. Sept. 16, 2015) (Final Written Decision). The Board additionally found that claims 1, 3-5, and 10-13 are unpatentable as obvious in view of Shell 1998 in combination with Papadimitriou. Id. at *11.
Depomed timely appealed to this court, and shortly thereafter, Endo withdrew as a party to this appeal. Following Endo’s withdrawal, the Director of the United States Patent and Trademark Office intervened pursuant to 35 U.S.C. § 143, filing a brief and participating in oral argument. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(c) to review the Board’s final written decision.
Discussion
On appeal, Depomed argues that the Board erred in failing to account for the unexpected results of combining PEO and HPMC. Depomed also argues that the Board’s obviousness conclusion improperly relied on hindsight bias. Finally, Depomed argues that the Board applied an incorrect legal standard to assess long-felt, but unmet, need. We address each argument in turn.
I.
We first consider Depomed’s argument that the Board erred in its obviousness conclusion by failing to account for the unexpected results of combining PEO and HPMC.
*951 A patent claim is unpatentable as obvious “if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.” 35 U.S.C. § 103. Obviousness under § 103 is a mixed question of law and fact. We review the Board’s ultimate obviousness determination de novo and underlying factual findings for substantial evidence. Harmonic Inc. v. Avid Tech., Inc., 815 F.3d 1356, 1363 (Fed. Cir. 2016). Substantial evidence “means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Consol. Edison Co. v. NLRB, 305 U.S. 197, 217, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Factual considerations underlying the obviousness inquiry include the scope and content of the prior art, the differences between the prior art and the claimed invention, the level of ordinary skill in the art, and relevant secondary considerations. KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 406, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) (citing Graham v. John Deere Co., 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)). Relevant secondary considerations include commercial success, long-felt but unmet need, failure of others, and unexpected results. Id.
Citing column 3, lines 33-65 of the specification, Depomed argues that the Board failed to account for the alleged unexpected properties of the patented invention, namely, that the combination of HPMC and PEO yielded better controlled-release properties compared to using HPMC or PEO alone. Column 3 of the specification states that combining HPMC and PEO as a matrix for a swellable, sustained-release tablet provides “unexpectedly beneficial performance, avoiding or substantially reducing the problems” with using either HPMC or PEO alone, ’340 patent col. 3 11. 33-40.
The Board considered Depomed’s argument and determined that, to the contrary, Depomed’s evidence of unexpected results was entitled to “little weight” and did not overcome the petitioner’s showing of obviousness. Final Written Decision, 2015 WL 5470293, at *23. The Board separately explained that one of ordinary skill would have expected that combining HPMC and PEO would provide a solid matrix for controlled drug release because Shell 1998 discloses a finite number of identified, predictable polymers that could be used individually or in combination, of which HPMC and PEO are “particularly preferred” polymers. See J.A. 415. Though Shell 1998 does not explicitly disclose the combination of HPMC and PEO, it suggests the desirability of such a combination by stating that “[cjertain combinations will often provide a more controlled release of the drug than their components when used individually.” Id. at 416. The Board held that these facts support a conclusion “that the combination of PEO and HPMC, identified by the Shell 1998 Publication as particularly preferred polymers, would have been obvious to one of ordinary skill in the art at the time of the ’340 patent.” Final Written Decision, 2015 WL 5470293, at *9.
On this record, we conclude that substantial evidence supports the Board’s finding that Depomed’s evidence of unexpected results is weak and entitled to little weight. “To be particularly probative, evidence of unexpected results must establish that there is a difference between the results obtained and those of the closest prior art, and that the difference would not have been expected by one of ordinary skill in the art at the time of the invention.” Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc., 752 F.3d 967, 977 (Fed. Cir. 2014). Here, Shell 1998 discloses (1) a finite number of matrix polymers, of which *952 HPMC and PEO are preferred; (2) that matrix polymers “can be used individually or in combination”; and (3) that “[c]ertain combinations will often provide a more controlled release of the drug than their components when used individually.” J.A. 416. The express disclosure that combinations of polymers will often yield better results than when- used alone undermines Depomed’s suggestion that the difference between using HPMC and PEO individually and using them in combination would not have been expected.
At bottom, we discern no error in . the Board’s ultimate conclusion of obviousness. Even after giving Depomed’s unexpected results evidence the weight afforded by the Board, we agree with the Board’s ultimate conclusion that the claims are obvious in view of Shell 1998.[2]
II.
Depomed also argues that the Board’s analysis of the prior art was erroneous “because it analyzed the prior art through the distorted lens of hindsight bias.” Appellant Br. 30. Specifically, De-pomed argues that Shell 1998 discloses polymer combinations solely for the purpose of overcoming deficiencies in the controlled release properties of certain polymers in their individual capacities. Because HPMC and PEO did not exhibit these deficiencies in their individual capacities, Depomed argues that a person of ordinary skill in the art would have had no motivation to combine HPMC and PEO, and thus, the Board’s obviousness conclusion was the result of hindsight bias. We disagree.
As explained above, Shell 1998 does not explicitly disclose the combination of HPMC and PEO. Shell 1998, nevertheless, discloses combinations including, xanthan gum combined with hydroxyethyl cellulose, hydroxypropyl cellulose, or PEO. We agree, however, with the Board’s finding that Shell 1998 “does not limit which polymers could be combined or suggest that certain polymers would not function properly in a combination matrix.” Final Written Decision, 2015 WL 5470293, at *9. Accordingly, we conclude that substantial evidence supports the Board’s interpretation of Shell 1998 and see no error in the Board’s ultimate conclusion of obviousness.
III.
Finally, Depomed argues that the Board incorrectly required evidence demonstrating a failure of others to establish a long-felt but unmet need. We agree.
Though we have held that long-felt but unmet need is closely related to the failure of others, they are distinct considerations. See, e.g., Graham, 383 U.S. at 18, 86 S.Ct. 684 (listing long-felt but unsolved need and failure by others as separate secondary considerations); In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation, 676 F.3d 1063, 1081-83 (Fed. Cir. 2012) (noting that “[ljongfelt need is closely related to the failure of others” but separately analyzing evidence of both in discrete sections). While “[e]vi-dence is particularly probative of obviousness when it demonstrates both that a demand existed for the patented invention, and that others tried but failed to satisfy that demand,” a patent owner may establish a long-felt but unmet need without *953 presenting evidence of failure of others. In re Cyclobenzaprine, 676 F.3d at 1082.
In its analysis of Depomed’s evidence of long-felt but unmet need, the Board incorrectly stated that evidence demonstrating a failure of others is necessary to show a long-felt but unmet need. At oral argument, however, counsel for the Director correctly acknowledged that evidence of a failure of others is not required to demonstrate long-felt but unmet need. See Oral Arg. at 14:40-58, 15:14-24, http://oral arguments.cafc.uscourts.gov/default.aspx? fl=2016-1378.mp3.
Even though the Board misstated the law, it accorded some weight to Depomed’s long-felt but unmet need evidence. De-pomed’s evidence consisted of conclusory inventor testimony that “there was a long-felt need in the field for a once-daily, gastric-retentive, controlled-release dosage forms to deliver highly soluble drugs slowly, evenly and reproducibly.” J.A. 758. Without citing any evidentiary support, the inventor identified problems associated with immediate release dosage forms of metformin and gabapentin and explained that these problems were ameliorated by later dosage forms of these drugs that practiced the ’340 patent.
We conclude that, despite the Board’s misstatement of the law, substantial evidence supports its assignment of little weight to Depomed’s evidence of long-felt but unmet need. We also agree with the Board’s ultimate conclusion that the claims are obvious in view of Shell 1998.
Conclusion
We have considered Depomed’s remaining arguments regarding secondary considerations but discern no errors in the Board’s analysis.[3] Because we find that the Board did not err in holding claims 1, 3-5, and 10-13 of the ’340 patent unpatentable, we affirm.
AFFIRMED
Costs
No costs.

. Given the effective filing date of the claims of the '340 patent, the version of 35 U.S.C. § 103 that applies here is that in force preceding the changes made by the America Invents Act. See Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 3(n), 125 Stat. 284, 293 (2011).

. The concurrence contends that we "appear to accept” an allegedly improper two-step framework in the Board’s obviousness analysis. Concurrence 1. We do not suggest a two-step framework. Rather, we simply find substantial evidence supports the Board’s factual findings underlying its conclusion of obviousness and agree with its ultimate legal conclusion that the claims are invalid as obvious.

. Depomed additionally raises a separate issue challenging the constitutionality of IPR proceedings. We have previously held that such proceedings do not violate Article III or the Seventh Amendment, MCM Portfolio LLC v. Hewlett-Packard Co., 812 F.3d 1284, 1291-93 (Fed. Cir. 2015), cert. denied, — U.S.—, 137 S.Ct. 292, 196 L.Ed.2d 212 (2016). "We are bound by prior Federal Circuit precedent ‘unless relieved of that obligation by an en banc order of the court or a decision of the Supreme Court.’ ” Id. (quoting Deckers Corp. v. United States, 752 F.3d 949, 959 (Fed. Cir. 2014)).